USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/28/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIANE M. MOULTRY,

                  Plaintiff,

  -against-

ROCKLAND PSYCHIATRIC CENTER,

                  Defendant.

17-cv-4063 (NSR)

OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Diane M. Moultry ("Plaintiff" or "Moultry"), proceeding *pro se*, commenced this action against the Rockland Psychiatric Center ("Defendant" or "RPC") alleging claims of discrimination, *inter alia*, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-17 ("Title VII"). (ECF No. 1.) Presently before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure §§ 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)"). (ECF No. 40.) For the following reasons, Defendant's motion is DENIED, in part, and GRANTED, in part.

## BACKGROUND

    The below facts are taken from Plaintiff's pleadings and matters of which the Court may take judicial notice and are accepted as true for purposes of this motion.

    Plaintiff, an African-American individual, alleges that her employer, Defendant RPC, discriminated against her on the basis of race. Plaintiff alleges Defendant did not promote her, provided her with terms and conditions of employment different from those of similar employees, and harassed her or created a hostile work environment for the sole purpose of discriminating against her.

    Plaintiff filed an employment discrimination charge against the Defendant with the Equal Employment Opportunity Commission ("EEOC") on December 7, 2016, and received a "Notice of Right to Sue"" on February 27, 2017. (Original Compl. at 6.) Thereafter, Plaintiff commenced this action. By

Order dated October 30, 2018, the Court dismissed all claims asserted pursuant to 42 U.S.C. § 1981 and the N.Y.S. Human Rights Law on the basis of sovereign immunity, claims of alleged discrimination under Title VII which occurred before February 11, 2016 as time barred, and dismissed, without prejudice to renew, those claims sounding in Title VII for failure to promote on or about November 2016 and for hostile work environment. (ECF No. 29.)

Plaintiff filed her Amended Complaint on December 13, 2019, wherein she asserts claims for discrimination, failure to promote, hostile work environment, and retaliation. Plaintiff was employed by Defendant from May 6, 2010 through October 2018, when she retired. (ECF. No. 30.) When Plaintiff commenced her employment at RPC, her title was "Rehabilitation Counselor 2." By the end of her employment, she had also held the title of "Acting Treatment Mall Coordinator" and was supervised by Inge Curran ("Ms. Curran") and Donna Willoughby ("Ms. Willoughby").

During her tenure at RPC, Plaintiff applied for and was hired to the position of Acting Treatment Mall Coordinator.  (Amended Compl. at 1.) The position did not come with a salary increase.  Plaintiff took the position on the belief that she would eventually be promoted to supervisor.  This belief was based on statements made by Ms. Willoughby to Plaintiff regarding promotional opportunities and common practice at RPC.[1] Plaintiff applied on several occasions for the position of Rehab Supervisor and was denied the promotion each time. On November 29, 2016, Ms. Curran and Ms. Willoughby informed Plaintiff that she was not selected for the position of Rehab Supervisor. Despite being "qualified," Ms. Willoughby promoted Maureen McCue ("Ms. McCue"), a Caucasian woman, instead of Plaintiff.  Ms. McCue had inferior test scores, less experience and lacked the proper temperament. Plaintiff asserts Ms. McCue "displayed qualities that were not conducive to a productive work atmosphere" and frequently harassed her colleagues.  (*Id.* at 2.)

---

[1] In Plaintiff's Amended Complaint, she provides examples of employees who took on "Acting" positions and were eventually promoted to the position full-time with full benefits. (Amended Compl. at 1.) For instance, Chris Travella was Acting Director and was later appointed to the Director position. I-Chan Wang and Dr. Raymond also had

After she failed to be promoted, Plaintiff spoke to management, Ms. Willoughby, about being passed over, the amount of work involved in serving as the Acting Treatment Mall Coordinator, the lack of proper compensation and the lack of career advancement opportunities. She was also particularly upset that her Caucasian peers did not have to work as hard and as many hours as she did. Plaintiff also suggests that although she was qualified to train others, including some of her Caucasian peers, management would promote her Caucasian peers over her. Plaintiff's allegations suggest she trained Ms. McCue.

Plaintiff alleges Defendant showed preferential treatment to Caucasian employees in other respects. For example, Defendant compensated Mr. Pachlin, a Caucasian man, "for the work he was doing until such time that he would be able to take an exam and get permanent status," which is allegedly not something Defendant would do for her. (*Id.* at 3.) Likewise, Plaintiff asserts Defendant did not scrutinize Mr. Pachlin's scheduling and organizational skills, yet scrutinized hers. Mr. Pachlin was given "far fewer" tasks and responsibilities to complete than she was. Similarly, Plaintiff claims Defendant held her accountable for handing in late assignments but promoted Ms. McCue, who had inferior test scores, less experience than Plaintiff, and was routinely late with her assignments.

Plaintiff describes the environment fostered at RPC as hostile, uncomfortable and stressful. She alleges this environment persisted, in part, because Ms. Willoughby appointed Ms. McCue to a supervisor position she was not suited for. She claims Ms. McCue "harassed staff, sabotaged meetings and special events, and displayed inappropriate conduct." (*Id.* at 3.) Likewise, she alleges Ms. McCue "singled out" misdeeds of staff persons of color over Caucasians when discussing compliance issues. For example, Ms. McCue would unfairly single out Jullanar Khan and Carina Pacheco, individuals of color, for their errors but would not identify Caucasian employees who committed similar mishaps.

She asserts "Caucasian staff seemed to have more opportunity for career advancement in the Rehab[ilitation] Department than persons of color even when all other things were equal." (*Id.* at 6.)

similar experiences.

3

Moreover, Plaintiffs claims she was "humiliated" and "mocke[d]" during one of the interviews for Supervisor of Rehabilitation. She alleges Ms. Willoughby ridiculed her after she answered one of the questions. When Plaintiff tried to explain and provide support for the accuracy of her answer, Ms. Willoughby started "laughing" at her during the interview. (*Id.* at 5.)

Lastly, Plaintiff claims Ms. Willoughby retaliated against her for complaining to management. She asserts Ms. Willoughby did not promote her but instead offered her a new position with a "made up title" that had "no monetary benefits and no opportunity for advancement." (*Id.* at 2.) Plaintiff declined the offer because, in part, she "didn't want to continue doing all that work . . . when [] [her] Caucasian co-workers were being compensated [] for providing those same services." (*Id.* at 3.)

## LEGAL STANDARD

**RULE 12(b)(1)**

A claim is subject to dismissal under Rule 12(b)(1) if the court lacks subject matter jurisdiction to adjudicate it pursuant to statute or constitutional authority. *See* Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, a district court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). A lack of standing and a failure to exhaust administrative remedies constitute jurisdictional defects and may be addressed through a Rule 12(b)(1) motion. *Johnson v. Benheim*, 2001 WL 799569 at *4 (S.D.N.Y. July 13, 2001) (internal citation omitted). Plaintiff bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction of the claim asserted. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

**RULE 12(b)(6)**

Pleadings are required to contain a "short and plain statement of the claim, showing the pleader is entitled to relief." Fed. Rul. Civ. Pro. 8(a)(2). To withstand a motion to dismiss pursuant Rule 12(b)(6), "a

4

complaint must contain sufficient factual matter, accepted as true, [that] 'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint which fails to state a plausible claim is subject to dismissal. Fed. R. Civ. P. 12(b)(6).  Facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556.

While a court's consideration on a motion to dismiss is ordinarily "limited to facts stated on the face of the complaint[] [and] in documents appended to the complaint or incorporated in the complaint by reference," *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991), "'[a] document filed *pro se* is 'to be liberally construed,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  A *pro se* complaints must be interpreted "to raise the strongest arguments that they suggest."  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

Courts are required to "accept as true all of the factual allegations contained in the [*pro se*] complaint," and the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 89, 94 (internal quotation marks omitted). Yet "pro se complaint[s] must still state a facially plausible claim to survive a motion to dismiss." *Id.* While legal conclusions may provide the "framework of the complaint . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

## DISCUSSION

A plaintiff asserting claims for alleged violations of Title VII must satisfy jurisdictional prerequisites by filing timely charges of employment discrimination with the EEOC and receiving and acting upon the EEOC's statutory notice of the right to sue.  *See McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973) (citing 42 U.S.C. §§ 2000e-5(a) and 2000e-5(e)). A district court obtains jurisdiction

over a Title VII claim once a plaintiff has exhausted her administrative remedies before the EEOC, and then may only consider claims affirmatively asserted before the agency, as well as those claims reasonably related to those affirmatively alleged which arise during the pendency of the EEOC's investigation or timely filed federal case. *See Duplan v. City of New York*, 888 F.3d 612, 624 (2d Cir. 2018).

Title VII of the Civil Rights Act of 1964, provides in relevant part that it is "unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). An employment decision violates Title VII when it is based in whole or in part on discriminatory animus. *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) *(quoting Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). To assert a plausible claim of employment discrimination, a plaintiff must allege the following: (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011). Generally, "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), and only "minimal" evidence is "necessary to satisfy th[e] initial burden." *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *Littlejohn*, 795 F.3d at 312 (focusing only on "whether the allegations in the complaint give plausible support to the reduced prima facie requirement" in deciding a motion to dismiss). Interpreting Plaintiff's *pro se* Amended Complaint to raise the strongest argument it suggests and accepting all of the factual allegations as true, Plaintiff's allegations are sufficient to assert a plausible claim of employment discrimination.

**Discrimination and Constructive Discharge**

Plaintiff is of African American descent and is within a protected class. *See Littlejohn*, 795 F.3d at 3123 (noting that an African American person belongs to a protected class). She asserts that she applied for the Rehabilitation Supervisor's position on multiple occasions, including on or about November 2016,

6

and was denied the promotion. The position was given to Ms. McCue, a Caucasian. Plaintiff has affirmatively alleged that she was qualified for the promotional position. *Littlejohn*, 795 F.3d at 312. Plaintiff held the position of Acting Treatment Mall Coordinator and helped train some of her peers. She further alleged that her supervisor, Ms. Willoughby, asked Plaintiff to assist her in some the supervisor responsibilities after the previous supervisor retired because Plaintiff "qualified" for the position. (Amended Compl. at 1.)

Plaintiff has also alleged that she was subjected to an adverse employment action. Generally, to constitute an adverse employment action, there must be a change in working conditions that are deemed more disruptive than a mere inconvenience or an alteration of job responsibilities. *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) "Adverse employment actions include discharge from employment. Such a discharge may be either an actual termination of the plaintiff's employment by the employer or a 'constructive' discharge." *Fitzgerald v. Henderson,* 251 F.3d 345, 357 (2d Cir. 2001).

A "[c]onstructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000) (quoting *Chertkova v. Connecticut Gen. Life Ins.*, 92 F.3d 81, 89 (2d Cir. 1996)) (internal citation omitted). A constructive discharge has been deemed an adverse act. *Fitzgerald,* 251 F.3d at 357. Plaintiff alleges she was forced to resign due to the harsh and unbearable conditions created by her supervisors. In essence, that she was constructively discharged.

Lastly, Plaintiff has sufficiently asserted facts to support a finding that her termination occurred under circumstances giving rise to an inference of discrimination. "An inference of discrimination can arise from circumstances including, but not limited to . . . the more favorable treatment of employees not in the protected group" or can be shown by an employer "replac[ing] a terminated or demoted employee with

7

an individual outside the employee's protected class." *Littlejohn*, 795 F.3d at 312–13. Here, Plaintiff has alleged that the Defendant passed over Plaintiff on multiple occasions multiple times, in favor of candidates outside her protected class. Defendant's alleged conduct gives rise to an inference of discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 25 (1981); *see also Littlejohn*, 795 F.3d at 307, 311 (underscoring Plaintiff's "minimal" burden by noting a Title VII discrimination complaint "may simply use the word discrimination, thereby adequately communicating to the defendant the nature of the claim"). Accordingly, Defendant's motion to dismiss Plaintiff's Title VII claim for constructive discharge pursuant to Rule 12(b)(6) must be denied.

**Failure to Promote**

To establish a prima facie case of a discriminatory failure to promote, a Title VII plaintiff must ordinarily demonstrate four elements: "(1) she is a member of a protected class; (2) she 'applied and was qualified for a job for which the employer was seeking applicants'; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709–10 (2d Cir. 1998) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). In regards to the forth element, "the employer kept the position open and continued to seek applicants," the Second Circuit has applied the more generic formulation, whether the circumstances of the plaintiff's failure to promote give rise to an inference of discrimination, when the employer has filled the sought after position. *See Martinez v. Davis Polk & Wardwell LLP*, 208 F. Supp. 3d 480, 486 (E.D.N.Y. 2016), *aff'd*, 713 F. App'x 53 (2d Cir. 2017) (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003)). Interpreting Plaintiff's Amended Complaint to raise the strongest argument it suggests and accepting as true all of her factual allegations, as is required, Plaintiff has successfully pled the elements required to assert a plausible Title VII failure to promote claim. As previously discussed, Plaintiff is a member of a protected class, she was qualified for the position she applied for, she was rejected for the position and the circumstances giving rise to the

promotion of Ms. McCue, who was arguably less qualified, give rise to an inference of discrimination. *See Littlejohn*, 795 F.3d at 312 (noting "the more favorable treatment of employees not in the protected group" gives rise to an inference of discrimination).

**Hostile Work Environment**

To assert a claim for hostile work environment under Title VII, plaintiff must alleged sufficient facts to demonstrate that the workplace was "permeated with 'discriminatory intimidation, ridicule, and insult' that [was] 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). Severe or pervasive conduct is established if "a reasonable person would find [the work environment] hostile or abusive, and the victim [] subjectively perceives the work environment to be abusive." *Id.* at 21–22. But "[i]solated, minor acts or occasional episodes do not warrant relief." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

Plaintiff's pleadings do not support a finding of hostile work environment sufficient to survive a motion to dismiss. Plaintiff alleges she endured an "uncomfortable and stressful environment," but fails to allege the environment was hostile, except in a few conclusory remarks. Though Plaintiff claims her supervisor(s) displayed "qualities that were not conducive to a productive work atmosphere," "harassed staff" members, and "sabotaged meetings," (Amended Compl. at 2–5), such allegations are alleged in conclusory fashion. Similarly, Plaintiff's allegations that her supervisor(s) "singled out persons of color over Caucasian staff," and displayed "negative attitudes" lacks any specificity. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555) ("[t]hreadbare recitals of the elements of a cause of action [under Title VII], supported by mere conclusory statements, do not suffice"). Of significance, Plaintiff failed to assert a claim for or allege facts sounding in hostile work environment in her December 7, 2016 employment discrimination charge with the EEOC, which is a mandatory prerequisite. Though the Second Circuit has allowed for reasonable claims to be excused from Title VII's

exhaustion requirement, such excusal is permissible only if they arise during the pendency of an EEOC investigation or a timely filed federal case. *Duplan v. City of New York,* 888 F.3d at 624. Accordingly, Plaintiff's hostile work environment claim must be dismissed.

**Retaliation**

Plaintiff's claim for retaliation similarly fails. To pleading a plausible Title VII retaliation claim, a plaintiff must alleged facts to demonstrate: "(1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (citation omitted). The objective of a retaliation claim is to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice. *See Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).

Plaintiff's allegations of retaliation fail under a Rule 12(b)(6) analysis. Though Plaintiff's complaint to her supervisors concerning their decision to promote Ms. McCue over Plaintiff, which was purported made based on race and not on merit, may be sufficient to rise to the level of protected activity, the claim is insufficiently pled. Plaintiff largely attributes the adverse acts, such as the harassment, the sabotaging of meetings and special events, and the inappropriate conduct, to Ms. McCue after her promotion, but does not alleged that Ms. McCue was aware that Plaintiff had complained to management concerning her failure to be promoted. Plaintiff's allegations are lacking as to any adverse acts by Ms. Willoughby or Ms. Curran after she complained to them about not being promoted. The only alleged misdeed is that Ms. Willoughby offered Plaintiff a new position which did not come with a salary increase.

Plaintiff's retaliation claim also fails for failure to exhaust her administrative remedies. A review of Plaintiff's EEOC charge fails to assert any facts which closely resembles that of a retaliation claim. Moreover, Plaintiff's retaliation arose during her tenure at RPC, before the filing of the EEOC and did not

arise during the pendency of the EEOC investigation. Plaintiff's retaliation claim does not fall within the reasonably related claim which would excuse the exhaustion requirement. Accordingly, Plaintiff's retaliation claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED as to Plaintiff's discrimination and failure to promote claims, and GRANTED as to Plaintiff's hostile work environment and retaliation claims. Defendant shall file its answer within thirty days of this opinion, on or before June 29, 2020. The parties are directed to confer and prepare a proposed case scheduling and discovery order (blank form attached hereto), for the Court's consideration, within thirty days thereafter, on or before July 29, 2020. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 40. Defendant is directed to mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF, and to file proof of service on the docket.

Dated:   May 28, 2020
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT                                        Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

                                                                          **CIVIL CASE DISCOVERY PLAN**
                                    Plaintiff(s),        **AND SCHEDULING ORDER**
- against -

                                      Defendant(s).      _____ CV _____ (NSR)

---------------------------------------------------------------x

      This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

   a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

   b. Depositions shall proceed concurrently.

   c. Whenever possible, unless counsel agree otherwise or the Court so orders,

       non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York

_____

_____

Nelson S. Román, U.S. District Judge